# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

| | | |
|---|---|---|
| **DALRAIDA PROPERTIES, INC.,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:14-cv-1213-MHT-PWG** |
| | ) | |
| **ELASTIKOTE, LLC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

On December 22, 2014, the above-styled matter was referred to the undersigned for review by United States District Judge Myron H. Thompson. (Doc. 10); *see also* 28 U.S.C. § 636(b); Rule 72, Fed. R. Civ. P.; *United States v. Raddatz,* 447 U.S. 667 (1980); *Jeffrey S. v. State Board of Education of State of Georgia,* 896 F.2d 507 (11th Cir. 1990). On November 6, 2014, Plaintiffs Dalraida Properties, Inc. ("Dalraida Properties"), and Pilkerton Building Company, LLC ("Pilkerton"), filed this lawsuit in state court asserting claims sounding generally in fraud, negligence and breach of warranty against Defendants ElastiKote, LLC ("ElastiKote"), The Sherwin-Williams Company ("Sherman-Williams"), and Ty Simmons. (Docs. 1 & 1-1). Plaintiffs also seek punitive damages under Ala. Code § 6-11-20 (1975). (Doc. 1-1

1

at p. 16). Twelve days prior to the order of reference, Defendant Sherwin-Williams Company, with the consent of its co-defendants, removed this lawsuit from the Circuit Court of Montgomery County, Alabama, to this court and asserts subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (Doc. 1). Before the court is Plaintiff's motion to remand. (Doc. 13). The motion is briefed and deemed under submission.

Dalraida Properties and Pilkerton are Alabama residents because they are Alabama corporations with their principal places of business in that state. ElastiKote and Sherwin-Williams are formed and have their principal places of business in Ohio. (Doc. 1 at pp. 5-6). Defendant Simmons is a resident of Alabama. (Docs. 1, 1-1, and 1-3). Defendants argue, however, that Mr. Simmons is fraudulently joined.

Upon consideration and for the reasons discussed herein, the Magistrate Judge **RECOMMENDS** that the motion to remand be **GRANTED** and that this matter be remanded to the Circuit Court of Montgomery County, Alabama.

## I.      DIVERSITY JURISDICTION AND FRAUDULENT JOINDER

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.

2000); *accord City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012). A federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).

Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly.... Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999); *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996); *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (a federal court is "obligat[ed] to narrowly construe removal statutes"; this obligation necessarily "requires that uncertainties be 'resolved in favor of remand'") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)). A removing defendants' burden to establish federal jurisdiction is "a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). "When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

A defendant seeking to prove that a co-defendant was fraudulently joined must demonstrate either that: "(1) there is no possibility the plaintiff can establish a cause of action against the [non-diverse or] resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Id.* The defendant must make such a showing by *clear and convincing evidence. See Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962) (emphasis added).[1]

In the context of fraudulent joinder, the court is required to both evaluate the parties' factual allegations and submissions in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *See Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). "However, if a defendant shows that there is no possibility the plaintiff can establish [any of the alleged] cause[s] of action against the resident defendant, then the plaintiff is said to have fraudulently joined the non-diverse defendant." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (quotation marks and citation omitted). "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). "In that situation the federal court must dismiss the non-diverse

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

defendant and deny any motion to remand the matter back to state court." *Florence*, 484 F.3d at 1297.

Although the determination of whether a non-diverse defendant has been fraudulently joined "should be made based upon the plaintiff's pleadings at the time of removal," *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989) (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939)), a district court "can consider any submitted affidavits and/or deposition transcripts," *id*. (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983) ("Both parties may submit affidavits and deposition transcripts." (citing, in turn, *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir. Unit A Dec. 1981))), *superseded by statute on other grounds as stated in Georgetown Manor*, *Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993)).   The fraudulent joinder analysis, then, is not confined to the pleadings, but may also encompass "any affidavits and deposition transcripts submitted by the parties." *Legg v. Wyeth,* 428 F.3d 1317, 1322 (11th Cir. 2005).

## II.    BACKGROUND AND STATEMENT OF FACTS [2]

---

[2] It is necessary to explain the manner in which the court is obligated to cast the "facts" of this case.  The explanation is of particular importance in this case as there are considerable disputes of fact between those set out in Plaintiffs' allegations and those in the Declarations of Ty Simmons.  (Docs. 1-1, 1-3, & 16-1).  Defendants argue that Mr. Simmons' version of events, particularly his conclusion that he was only a "conduit" for information about ElastiKote products, should control when weighed against Plaintiffs' allegations to the contrary.  That is not so.  For purposes of this Report and Recommendation, as countenanced by the Eleventh Circuit in *Crowe*, *supra*, the disputed "facts" have been resolved in a light most favorable to Plaintiffs.

Plaintiff Dalraida Properties owns and operates a shopping center in Montgomery, Alabama, and it leases space to a Winn-Dixie grocery store. Since 2009, Pilkerton has conducted "general maintenance" for Dalraida Properties at the Winn-Dixie market. (Doc. 1-1 at p. 7). By late-2011, Winn-Dixie was experiencing problems with leaks as a result of standing water or "ponding" on its roof. (Doc. 1-1 at p. 7). Plaintiffs decided to repair the roof.

Defendant Simmons is currently a store manager for a Sherwin-Williams retail store in Montgomery, Alabama, and he has been employed by Sherwin-Williams since 2007. (Docs. 1-3 & 16-1; Declarations of Ty Williams). From January 2, 2011 until May 6, 2013, and during the time relevant to his participation in the events forming the basis of this lawsuit, Simmons was a sales representative for Sherwin-Williams. (Doc. 1-3 at p. 2). While working with Pilkerton on another project, Simmons learned that Pilkerton was planning to repair the Winn-Dixie roof. He "recommended that Pilkerton purchase and use ElastiKote, a [brand of products] sold by his employer, Sherwin-Williams" to repair the roof. (Doc. 1-1 at p. 7). On a separate occasion, Simmons called and "assured" Pilkerton that ElastiKote products would "withstand the ponding water" on the Winn-Dixie roof, and he also

---

However, that does not constitute a rendering of findings of fact in Plaintiffs' favor, and the facts set out herein might not be the actual facts of this case. Moreover, the court has not weighed the evidence or made credibility determinations.

"encouraged" Pilkerton to purchase a "GRACO spray machine" from Sherwin-Williams, which is a necessary tool for applying ElastiKote. (Doc. 1-1 at p.7).

In March 2012, Josh Brandyberry, who was the "Technical Support Manager and Director of Technical Sales for ElastiKote flew to Montgomery" from Ohio at the behest of Simmons and Sherwin-Williams. (Doc. 1-1 at p. 8). Brandyberry and Simmons met with Pilkerton, took measurements of the roof, and recommended the use of "ElastiKote 100." (*Id.*). Simmons testifies, through a declaration filed in opposition to the motion to remand, that he "did not possess Brandyberry's qualifications for sophisticated explanations and/or recommendations with respect to the ElastiKote products .... All of the oral assurances or recommendations [he] made about the ElastiKote products were general statements about the use of the product and based on ElastiKote materials provided to [him] and on the positive experiences of other persons who used the same products." (Doc. 16-1 at pp. 2-3, ¶¶ 9-10).

Brandyberry later provided Pilkerton with literature regarding ElastiKote containing information on warranties and product use, supplied a letter that set out purported money saving benefits of ElastiKote products versus a traditional roof replacement, and promised to train Pilkerton on the proper application of ElastiKote products. After the meeting, Sherwin-Williams provided Pilkerton with an estimate for all costs associated with using ElastiKote for the roofing repair. Brandyberry

7

supplied Pilkerton with an estimate of the number of drums of ElastiKote 100 and

"Labor Sav'R," another ElastiKote product, that would be needed for the Winn-Dixie

repair project.

In October 2012, Plaintiffs decided to use ElastiKote products to repair the roof

on the shopping center, and they made that decision in reliance on the representations

of ElastiKote, Sherwin-Williams, and Simmons that ElastiKote "could withstand

ponding water, was capable of being safely/effectively applied in winter conditions,

was compatible with the existing roof coating and was guaranteed through a ten-year

warranty[.]"   (Doc. 1-1 at p. 9).   Dalraida Properties purchased the materials

Brandyberry identified in his March 2012 written estimate from Sherwin-Williams

and ElastiKote.  Pilkerton also purchased a GRACO machine that Simmons located

in a Sherwin-Williams store in Birmingham, Alabama.

The following month, Brandyberry spend two days training Pilkerton in the use

and application of ElastiKote products on the Winn-Dixie rooftop.  He also cleaned

and prepared the roof as well as supervised the first day's application of ElastiKote

100 on November 7, 2012.  On the days ElastiKote was applied, the roof area was

dry.  (Doc. 1-1 at p. 12).  Simmons was also present for the first application of

ElastiKote.  Prior to November 7 and after assuring Pilkerton that ElastiKote was

appropriate for curing the ponding water problem, Simmons "had never seen the

product in person and visited the site to familiarize himself with the product and the application process." (Doc. 1-1 at p. 11).

During that first application of ElastiKote products, Brandyberry experienced problems with a "spray gun" on the GRACO machine. (Doc. 1-1 at p. 10). The problem required Brandyberry to undertake several rounds of disassembling and cleaning the spraying apparatus. Also, Brandyberry found "all kinds of rubbery chunky crap at the bottom of the drums" of ElastiKote products as well as "chunks of wood and paper clips" that were clogging the GRACO machine. (Doc. 1-1 at p. 10). Brandyberry explained to Pilkerton that the problems with the spray gun should not have occurred and that the foreign substances should not have been present in the drums of product, but he assured Pilkerton that ElastiKote 100 was the proper product for the job. Brandyberry gathered samples of the debris and returned to Ohio.

In January 2013, Pilkerton completed the application of ElastiKote 100 in accordance with Brandyberry's instructions. According to Plaintiffs, Simmons underestimated the amount of ElastiKote 100 required for the job, and Plaintiffs were forced to purchase an additional four drums of product. After the application process was completed, Brandyberry returned to the job site to inspect the roof, but he did not give Pilkerton advance notice of the visit and Pilkerton was not present for the inspection. Brandyberry later confirmed to Pilkerton by telephone that the "job had

9

been completed correctly and met with ElastiKote's workmanship specifications."
(Doc. 1-1 at p. 11).  However, ElastiKote never sent any warranty documents to
Plaintiffs, and Plaintiffs did not "register" a warranty with ElastiKote's corporate
headquarters.  (Doc. 1-4).

Approximately ten months later, the roof began to leak, primarily under areas
of ponding water.  At one point, the leaks effected approximately 1,000 square feet
of space.  (Doc. 1-4 at p. 41).  On January 13, 2014, Pilkerton contacted Brandyberry
to request additional ElastiKote product to repair the leaks.  Pilkerton also sent
Brandyberry documentation of the leaks and damage, which included photographs of
ponding water on the roof.  Brandyberry did not acknowledge that the fault was with
the ElastiKote product.  Instead, he opined that the products were not working
properly because of issues with the condition of the roof at the time of installation,
the incorrect thickness of the applied product, or that a "foreign substance" interfered
with the normal function of ElastiKote products.  (Doc. 1-1 at p. 12; Doc. 1-4 at p.
41).  Brandyberry instructed Pilkerton to remove the ponding water, to allow the areas
to dry for a few weeks, to apply Labor Sav'R to the dry areas, to cut large sections of
blistered ElastiKote product from the roof, and to apply additional ElastiKote
products.  Pilkerton disagreed with Brandyberry's assessment of the cause of the
leaks and protested that Pilkerton did not have any additional ElastiKote 100 or Labor

Sav'R to implement Brandyberry's instructions.

Brandyberry sent Pilkerton one bucket of Labor Sav'R and a drum of ElastiKote 1000, which Brandyberry described as being "our actual tested product." Pilkerton applied the new product as instructed, but problems with the roof persisted. The problems included more leaks, moisture under the applied ElastiKote products, and additional "blistering" of the ElastiKote products. The products were also separating from the roof substructure.

In August 2014, Pilkerton informed Brandyberry that the additional material failed to stop the leaks, and Brandyberry agreed to visit the site. The following month, Brandyberry inspected the roof. He informed Pilkerton that the ElastiKote products were applied properly and with the correct thickness. Brandyberry stated that Pilkerton's "application did not contribute to the failure in any way." (Doc. 1-1 at p. 13). He further admitted that ElastiKote 100 and ElastiKote 1000 "failed and caused water to penetrate the Winn-Dixie's roof structure." (Doc. 1-1 at p. 13). He directed that additional ElastiKote products should not be applied to the roof because the existing product "was compromised." (Doc. 1-1 at p. 14).

After Brandyberry's site visit, Plaintiffs hired a roofing company to repair the roof. Plaintiffs allege that Winn-Dixie suffered damage as a result of the leaks and that the relationship between Dalraida Properties and Winn-Dixie, its largest tenant

at that shopping center, are strained.

Plaintiffs' specific claims, set out in eighteen separate counts, are as follows: (1) violation of the Alabama Extended Manufacturers Liability Doctrine ("AEMLD")[3] against ElastiKote and Sherwin-Williams (Counts One and Fifteen); (2) breach of an implied warranty of merchantability against ElastiKote and Sherwin-Williams (Counts Two and Eleven); (3) breach of express warranty against ElastiKote (Count Three); (4) breach of implied warranty of fitness for a particular purpose against ElastiKote and Sherwin-Williams (Counts Ten and Sixteen); (5) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3), against ElastiKote (Count Four);[4] (6) negligence against ElastiKote and Ty Simmons (Counts Five and

---

[3] *Nota bene*: An AEMLD claim finds its genesis in two decisions by the Alabama Supreme Court: *Casrell v. Altec Indus., Inc.*, 335 So.2d 128 (Ala. 1976), and *Atkins v. AMC*, 335 So.2d 134 (Ala. 1976).   "The AEMLD is a judicially created accommodation of Alabama law to the doctrine of strict liability for damage or injuries caused by allegedly defective products." *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 5 (Ala. 2002). The AEMLD "by definition ... include[s] not only the manufacturer, but also the supplier and the seller." *Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132 (Ala. 1976).

[4] The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, is a federal law that creates a cause of action by a consumer against a supplier for a breach of an express warranty. The Act contains a provision allowing a prevailing plaintiff to recover reasonable attorney's fees and costs.  *See* 15 U.S.C. § 2310(d)(1)(B)(2).   A federal court has subject matter jurisdiction over any lawsuit that is not a class action with damages in excess of $50,000.00; state courts have jurisdiction over claims for less than that jurisdictional amount.  *See* 15 U.S.C. § 2310(d)(1-3).

This lawsuit was removed by Sherwin-Williams expressly under an assertion of diversity jurisdiction pursuant to 28 U.S.C. § 1332.   The parties do not mention, either in the notice of removal or their briefing on the instant motion, the possibility of federal question jurisdiction pursuant to 28 U.S.C. § 1331 by virtue of Plaintiffs' claim under The Magnuson-Moss Warranty Act, which is set out in Count Four of the Complaint.   Because it is the removing party's "heavy"

Seventeen); (7) negligent repair against ElastiKote (Count Six); (8) negligent

misrepresentation against all Defendants (Counts Eight, Thirteen & Eighteen); (9)

negligent supervision by Sherwin-Williams (Count Twelve); (10) unjust enrichment

against ElastiKote and Sherwin-Williams (Counts Nine and Fourteen); and, (11) fraud

against ElastiKote (Count Seven).

## III.   DISCUSSION

Defendants argue that Simmons is fraudulently joined and that the minimum

amount in controversy is satisfied.  As to fraudulent joinder, Defendants frame their

position as: (1) Plaintiffs cannot, as a matter of law, maintain a cause of action for

negligence or negligent misrepresentation against Simmons; and, (2) Ala. Code § 6-5-

521 forecloses all claims against Simmons.  Defendants also argue that Plaintiff meets

the minimum amount in controversy requirement if the claims for damages are

aggregated; Plaintiffs specify damages in the amount of $71,276.51 for Dalraida

Properties.  Looking first to fraudulent joinder, Plaintiffs set out a plausible claim

against Simmons, the non-diverse Defendant.  Because the court determines and

recommends that the parties are not diverse, the amount in controversy issue is not

---

burden to demonstrate subject matter jurisdiction and the parties are silent on this point, the court
does not address or consider whether jurisdiction is proper under § 1331.  *Pacheco de Perez v.
AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998); *see also* 28 U.S.C. §§ 1441, 1446 (a party
removing an action from state court must set out its basis for doing so in the notice of removal
and subject to Fed. R. Civ. P. 11).

reached herein.  Of Defendants' arguments in favor of fraudulent joinder, an analysis of the impact of Ala. Code § 6-5-521 informs the question of whether Plaintiffs state a cause of action for either misrepresentation or negligence.

A cause of action against Defendant Simmons is not barred by Ala. Code § 6-5-521.  That statute codifies who may bring a "product liability action."

> A "product liability action" means any action brought by a natural person[5] for personal injury, death, or property damage caused by the manufacture, construction, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, or labeling of a manufactured product when such action is based upon (1) negligence, (2) innocent or negligent misrepresentation, (3) the manufacturer's liability doctrine, (4) the Alabama extended manufacturer's liability doctrine as it exists or is hereafter construed or modified, (5) breach of any implied warranty, or (6) breach of any oral express warranty and no other.

Ala. Code § 6-5-521(a).

Referred to as the "Innocent Seller" statute, the 2011 amendment to the Alabama Code at § 6-5-521 significantly limits a consumer's ability to bring such

---

[5] Plaintiffs argue that § 6-5-521 is "inapplicable since the plaintiffs are corporate entities and not 'natural persons.'" (Doc. 13 at p. 11).  In other words, Plaintiffs argue that the pitfalls of § 6-5-521 cannot attach to them because they are not natural persons.  The court need not and does not reach this linguistic argument.  Notably, however, Plaintiffs ignore that their proffered interpretation of the statute cuts two ways — *i.e.*, Plaintiffs may not be included in the statute and can avoid its limitations, but, as § 6-5-521 provides the exclusive definition of "product liability action" under Alabama law, it could alternatively be argued that Plaintiffs cannot bring such an action because they are not each a "natural person."  Where that would leave Plaintiffs in their quest for relief is uncertain.  This is seemingly an issue of first impression in Alabama and, as it is not dispositive to the jurisdictional issue before the court, it will not be discussed here.

actions against a "distributor." *Barnes v. General Motors, LLC*, Civil Action No.

2:14–cv–00719–AKK, 2014 WL 2999188, at *3 (N.D. Ala. July 1, 2014).

> No product liability action may be asserted or may be provided a claim for relief against any distributor, wholesaler, dealer, retailer, or seller of a product, or against an individual or business entity using a product in the production or delivery of its products or services (collectively referred to as the distributor) unless[:] ... The distributor is also the manufacturer or assembler of the final product and such act is causally related to the product's defective condition ... The distributor exercised substantial control over the design, testing, manufacture, packaging, or labeling of the product and such act is causally related to the product's condition ... The distributor altered or modified the product, and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought.

Ala. Code § 6-5-521(b)(1-3).  *See also Barnes*, *supra*; *Sewell v. Smith & Wesson Holding Corp.*, 2012 WL 2046830, at *2 (N.D. Ala. 2012).  "It is the intent of this subsection to protect distributors who are merely conduits of a product. This subsection is not intended to protect distributors from independent acts unrelated to the product design or manufacture, such as independent acts of negligence, wantonness, warranty violations, or fraud." Ala. Code § 6-5-521(b)(4).  The court in *Barnes* observed that "Alabama courts have failed to expound upon what 'independent acts of negligence [or] wantonness' fall outside the protection afforded by § 6-5-521(b)." *Barnes*, 2014 WL 2999188, at *4.

That has not changed in the eleven months since *Barnes* was decided.  There

are only three cases, all decided by federal courts, that discuss the "independent acts" aspect of § 6-5-521(b): *Barnes*, *supra*, *Lazenby v. Ex-Mark Manufacturing Co., Inc.*, No. 3:12-CE-84-WKW, 2012 WL 3231331 (M.D. Ala. Aug. 6, 2012), and *Sewell v. Smith & Wesson Holding Corp.*, No. 4:12-cv-00364-KOB, 2012 WL 2046830 (N.D. Ala. June 1, 2012). *Sewell* involved a product that was recalled after it was sold to the plaintiff and an allegation that the seller had a duty to warn before the recall was issued by the manufacturer. That case is distinguishable on its facts and provides little in the way of guidance in this matter. *Lazenby* and *Barnes*, on the other hand, are instructive. In both cases, the courts found that there was no fraudulent joinder of a seller of a product because of questions regarding that seller's alleged "independent acts" and remanded the actions to state court.

*Lazenby* was decided shortly after the 2011 amendments at § 6-5-521. *Barnes* summarizes and quotes from that case, in relevant part, as follows:

> In *Lazenby v. ExMark Manufacturing Co., Inc.*, the plaintiff was the representative of the estate of a Dr. William Lazenby, who died after a riding lawnmower rolled over on him while he was mowing his lawn. No. 3:12–CE–82–WKW [WO], 2012 WL 3231331, at *2 (M.D. Ala. Aug. 6, 2012). The plaintiff brought product liability claims, as well as claims for negligence and wantonness against the manufacturer and seller, contending that the riding lawnmower was designed and sold without a rollover protection system, and that "such a system likely would have prevented the accident that killed Dr. Lazenby." *Id*. After removal, which was based on the defendants' contention that the distributor who sold the riding lawnmower to Dr. Lazenby was

fraudulently joined because § 6-5-521(b) immunized it from products liability suits, and consequently that the distributor's Alabama citizenship did not defeat diversity jurisdiction, the plaintiff sought remand, arguing that § 6-5-521(b) "preserves causes of action based on wantonness against distributors for knowingly selling a product that is likely or probable to cause injury." *Id*. In granting the plaintiff's motion because her "interpretation of Ala.Code § 6-5-501 ... [was] at least plausible," *id*., the court observed:

> Plaintiff asserts a wantonness claim against PPE in her Complaint. The question is whether this claim plausibly rises to the level of an independent act unrelated to the product design or manufacture. Wantonness is the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. Plaintiff alleges that PPE made a deliberate decision to market and sell the Quest ZTR with the knowledge that it had no rollover protection system, and thus lacked an essential safety feature to protect ordinary homeowners and consumers.

> The basis of the wantonness claim is arguably related to the deficiencies in the product design in the way the statute contemplates. However, it is also arguable that it is independent conduct and not just derivative product liability. The decision to stock and sell a product that was known to be likely or probable to cause injury could constitute an independent act of wantonness that is separate from any act related to the design or manufacture of the product itself. That theory is that it is not the particular design flaw of the product that is the basis for the claim, but the decision of the defendant to sell a product (any product) it knows to be unreasonably dangerous.

> Whether Plaintiff's theory of wantonness is precluded because of its attenuated connection to the

> manufacture and design of the product is an unsettled question of Alabama law. Section § 6-5-501 was amended in 2011 to add the additional language barring products liability claims against distributors. Claims against distributors for independent wanton conduct were not precluded by this act. Considering the recent change in the law and the debatable nature of Plaintiff's wantonness claim, it would be inappropriate for the court to determine that there is no basis for Plaintiff maintaining an action against PPE. Plaintiff needs only to have a possibility of stating a valid cause of action in order for the joinder to be legitimate. Plaintiff has presented an unsettled question of law, which favors remanding this case for the Alabama state courts to interpret the law.

*Barnes*, 2014 WL 2999188, at * 4-5 (discussing and quoting *Lazenby*, *supra*).

The court in *Barnes*, when assessing a fraudulent joinder argument in a lawsuit by a consumer against an automobile dealership that was alleged to have knowingly sold a car that lacked air bags that were represented to be equipment on that model, concluded that "while § 6-5-521 is clearly meant to protect sellers who unknowingly sell products that later prove to be defective ... it is plausible that the drafters of [the] legislation entitled the Innocent Sellers Act did not intend for it to immunize sellers who deliberately choose to sell dangerous products to unwary consumers." *Barnes*, 2014 WL 2999188 at *5. Relying on the plausibility of the claim against the dealership and the Eleventh Circuit's directive in *Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1298-99 (stating that remand is proper where there is any

ambiguity or doubt regarding the plaintiff's state law claim against a non-diverse defendant), the court in *Barnes* held that it is plausible that because the plaintiff alleged facts that the dealership knowingly sold the defective vehicle, "the issue at hand hinges on resolving an unsettled question of state law[.]" *Id.* Based on the plausibility of the claim and the open question of law, the court remanded to the state court to consider the matter consistent with *Lazenby*.

At issue here is whether Defendant Simmons qualifies as an "innocent seller." This court deems it prudent to follow the path laid out by *Lazenby* and *Barnes* because, as in those cases, Simmons is alleged to have taken independent actions that remove him from the prohibition stated in § 6-5-521. Plaintiffs allege that Simmons committed several "independent acts" that are separate and apart from the design and manufacture of ElastiKote such that a cause of action against him is not plainly foreclosed by Ala. Code § 6-5-521. Those include Plaintiffs' allegations, as to Plaintiffs' misrepresentation claim, that Simmons "recommended that Pilkerton purchase and use ElastiKote," "called Pilkerton to assure him that ElastiKote would be a good product to withstand the ponding water the shopping center's roof experienced," "encouraged Pilkerton" to buy the GRACO spray machine, "made representations about ElastiKote's capabilities and durability without any personal knowledge of the product's true nature," "had never seen the product in person" until

19

ElastiKote was applied to the roof of the Winn-Dixie in November 2012, was not familiar with ElastiKote or its application process until he visited the Winn-Dixie immediately before ElastiKote was sprayed onto the roof, and "underestimated the proper quantity" for the Winn-Dixie job such that "he had to order four additional drums" of ElastiKote product. (Doc. 13 at pp. 13-14 (quoting and referencing Doc. 1-1)). There is no guidance by an Alabama court as to whether those alleged actions fall within the scope of "independent acts" for purposes of § 6-5-521(b). Absent authority on point, it would be rash to conclude as a matter of law that the statute forecloses a "product liability action" against Simmons when construing the facts in a light most favorable to Plaintiffs.

Moreover, based on what Plaintiffs allege are independent acts by Simmons, Plaintiffs have asserted at least a plausible cause of action for misrepresentation against Simmons. Under Alabama law, it is well-established that "[t]he elements of a misrepresentation claim are 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence." *Foremost Ins. Co. v. Parham*, 693 So.2d 409, 422 (Ala. 1997) (citing Ala. Code § 6-5-101; *Harrington v. Johnson–Rast & Hays Co.*, 577 So.2d 437 (Ala. 1991)). *See also*, *e.g.*, *Luck v. Primus Automotive Financial*

*Services, Inc.*, 763 So.2d 243 (Ala. 2000) (same); *Brushwitz v. Ezell*, 757 So.2d 423 (Ala. 2000) (same); *City of Prattville v. Post*, 831 So.2d 622 (Ala. Civ. App. 2002) (same).

Here, Plaintiffs allege that Simmons misrepresented that ElastiKote products were appropriate to repair the Winn-Dixie roof.  Based on Plaintiffs' allegations and on the portions of Mr. Simmons' declaration that do not conflict with Plaintiffs' averments of fact, Simmons knew nothing about ElastiKote but, nevertheless, made representations about the products that induced Plaintiffs to purchase ElastiKote.[6] Specifically, Simmons represented and assured Pilkerton that ElastiKote products would withstand ponding water on the roof at issue.  Plaintiffs allege that they relied on those representations, made without knowledge or recklessly, to their detriment.

Defendants sidestep Plaintiffs' averments against Simmons and, in an attempt to recast Plaintiffs' Complaint, argue that Plaintiffs' allegations arise "out of some damage resulting from the alleged defectiveness of the ElastiKote products." (Doc. 16 at p. 11).  That reading of the Complaint omits that Plaintiffs allege Simmons's lack of knowledge about ElastiKote products and his representations that ElastiKote

---

[6] Interestingly, Mr. Simmons declaration is written in such a way as to provide him with legal cover as he testifies to being a "conduit" and providing "opinion," but not technical information.  Plaintiffs' Complaint is written in such a way as to allege Simmons was directly responsible for providing material information about ElastiKote products, specifically that it would resist ponding water.

was suitable for the roof repair and to withstand ponding water caused Plaintiffs to purchase ElastiKote to their detriment.  Whether the evidence in this case ultimately supports Plaintiffs' allegations is not the issue and is a matter for another day. Plaintiffs have alleged enough to meet the bare elements of a claim of negligent misrepresentation under Alabama law.  This court is obliged to scratch the surface to determine whether a claim is plausible in a broad sense, and finds that such a claim is plausible.

Contrary to Defendants' arguments in their opposition to the instant motion, scienter or bad faith are not required for a misrepresentation claim in this instance. Defendants argue, relying on cases involving pharmaceutical sales representatives, real estate agents and appraisers, that a negligent misrepresentation claim will not lie against a seller under any circumstances.  (Doc. 16 at pp. 5-7 (discussing *Southern v. Pfizer, Inc.*, 471 F.Supp.2d 1207, 1211-13 (N.D. Ala. 2006), *Miller v. Sexton*, 549 So.2d 10, 12 (Ala. 1989) *Hope v. Brannan*, 557 So.2d 1208, 1212 (Ala. 1989)). Pharmaceutical sales representatives, in part because of the product they peddle, are held to a different standard under the law.  As noted in part in *Southern*, they do not prescribe medication or transmit information directly to patients, the ultimate consumer.  471 F.Supp.2d at 1215.  Also, pharmaceutical sales representatives may take refuge in the learned intermediary doctrine when confronted with a

misrepresentation claim; the duty to warn arguably extends from the representative to the physician but not from the representative to the patient.  *See Southern*, 471 F.Supp.2d at 1218.  Real estate agents, like pharmaceutical sales representatives, have been determined by courts to act as conduits for information, and they cannot be subject to a misrepresentation claim unless there is evidence of bad faith.  *Miller*, *supra*.

In other words, for pharmaceutical sales representatives and real estate agents, there is established case law that forecloses the possibility of a negligent misrepresentation claim as a matter of law.  A misrepresentation claim against those salespeople can only be advanced as one for fraudulent misrepresentation.  *See Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005) (a claim of misrepresentation against a pharmaceutical sales representative must include bad faith); *Miller*, *supra* (real estate agent and broker must act in bad faith to face liability for misrepresentation).  There is no such case law with regard to sales representatives who sell ElastiKote or like products, and there is no body of authority that suggests negligent misrepresentation ceases to exist under Alabama law.  To the contrary, it is codified.  *See* Ala. Code § 6-5-101.  Simmons made representations about ElastiKote, which was to be used as a roofing sealant or material, directly to a Plaintiff.  Simmons's lack of knowledge as to the veracity of his statements is an element of the negligent misrepresentation

claim asserted by Plaintiffs, not that claim's undoing.

Defendants also argue the Simmons's statements are "puffery" and opinion, which Defendants contend cannot form the basis of a misrepresentation claim in reliance on *Bryant Bank v. Talmage Kirkland & Co.*, 155 So.3d 231 (Ala. 2014). *Bryant Bank*, however, held that a property appraiser's opinion could serve as the basis for a negligent misrepresentation claim.  155 So.3d at 241.  More important is that *Bryant Bank* did not hold or restate a prior holding that opinions cannot form the basis of a misrepresentation claim under Alabama law.  Rather, opinions possibly give rise to questions of fact for a jury to resolve on a misrepresentation claim. *Id.* at 240-41.

Simmons is not, according to Plaintiffs' allegations, a sales representative who parroted his employer's representations about ElastiKote to Pilkerton.  Nor is he, as his declaration concludes, alleged to be only a "conduit" for information.  (Doc. 16-1).  Instead, he is alleged to be an individual who opined to Pilkerton about the virtues of ElastiKote without any knowledge whatsoever as to the truth of his statements.  While Defendants argue that Plaintiffs' allegations are all directed to the performance of ElastiKote products, that is not so.  Plaintiffs clearly and expressly allege and Simmons took independent actions that led them to choose ElastiKote products.  The plausible misrepresentation claim coupled with Plaintiffs' allegations

against Simmons place this case in line with *Barnes* and *Lazenby*.  An Alabama state court is the proper forum to decide the questions of law as to whether a misrepresentation claim against Simmons can be maintained or whether he qualifies as an innocent seller.  Construing the facts in a light most favorable to Plaintiffs, it is not evident that a claim against Simmons is barred.

"[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1298 (11th Cir. 2007); *see also Crowe,* 113 F.3d at 1542 ("...there need only be a reasonable basis for predicting that the state law might impose liability on the facts involved....").  When applying that standard, a court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainty about the applicable law in the plaintiff's favor. *See Crowe*, 113 F.3d at 1538.  A plaintiff's subjective motivation for joining the resident defendant is irrelevant.  *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc*., 436 Fed. Appx. 888, 893 n. 3 (11th Cir. 2011).  In the instant case, there is simply no evidence, beyond conclusory testimony in Simmons's declarations that has not been subjected to cross-examination by Plaintiffs at a deposition and contradicts Plaintiffs' allegations of fact, that would tend to prove

25

Plaintiffs cannot state a cause of action for misrepresentation against the non-diverse Defendant, Mr. Simmons. Given the low threshold for the plausibility standard on a motion to remand and the "heavy" burden on the removing party to demonstrate fraudulent joinder and subject matter jurisdiction, Defendants failed to provide clear and convincing evidence to show the fraudulent joinder of Simmons. Accordingly, this action should be remanded to the Circuit Court of Montgomery County, Alabama.[7]

## IV.    CONCLUSION AND RECOMMENDATION

For the reasons as stated, it is the **RECOMMENDATION** of the Magistrate Judge that Plaintiff's motion to remand (Doc. 13) is due to be **GRANTED**, and this case is due to be **REMANDED** to the Circuit Court of Montgomery, County, Alabama, for lack of subject matter jurisdiction at the time of removal.

It is **ORDERED** that the parties shall file any objections to this recommendation on or before **July 7, 2015**. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party

---

[7] Because the court concludes that Plaintiffs have alleged at least a plausible misrepresentation claim against Simmons, no analysis is provided regarding the plausibility of Plaintiffs' negligence claim against that Defendant. Once a court determines that it lacks subject matter jurisdiction, it must cease all activity and order that the case be remanded to state court. *See Raymon v. Alvord Independent School District*, 639 F.2d 257 (5th Cir. March 12, 1981) (upon finding that a court lacks jurisdiction, it must not continue to opine and is obligated to "dispatch the matter quickly").

objects.  Frivolous, conclusive or general objections will not be considered by the district court.  The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).

**DONE** and **ORDERED** this 23rd day of June, 2015.

 /s/ Paul W. Greene          
United States Magistrate Judge

27